IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MORRIS SHINER, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-1463 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                July 27, 2022

William Morris Shiner, Jr., ("Plaintiff") seeks review of the Commissioner's decision denying his application for disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on May 6, 2019, alleging disability beginning on December 31, 2013, as a result of illiteracy, diabetes, depression, bipolar disorder, leg amputation, neuropathy in both hands, and deafness in left ear.  Tr. at 77-78, 83, 248, 313.[2]  To be entitled to DIB, Plaintiff must establish that he became disabled on or before his date last insured, 20 C.F.R. § 404.131(b), which in this case is September 30, 2017.

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted for Andrew Saul as the defendant in this action.  Fed. R. Civ. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]As will be discussed in greater detail, the claimed onset date is problematic because, among other things, Plaintiff testified that he did not stop working until 2016. Tr. at 58.

Tr. at 38, 77, 309.  Plaintiff's application was denied initially, id. at 92-95, and on reconsideration.  Id. at 99-101.  Plaintiff requested a hearing before an ALJ, id. at 102, which took place on May 19, 2020.  Id. at 48-70.[3]  On May 29, 2020, the ALJ issued a decision concluding that Plaintiff was not disabled prior to September 30, 2017, the expiration of his insured status.  Id. at 36-42.  The Appeals Council denied Plaintiff's request for review on February 3, 2021, id. at 2-4, making the ALJ's May 29, 2020 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on April 2, 2021, Doc. 2, and the matter is now fully briefed and ripe for review.  Docs. 13, 14, 16.[4]

## II.    **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

---

[3] There were two prior hearings on April 7 and 14, 2020, but, as explained by the ALJ, there had not been a proper audio recording made of either one.  Tr. at 36, 51.

[4] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 7.  Originally the case was assigned to the Honorable Henry Perkin.  Upon Judge Perkin's retirement, the case was reassigned to me.  Doc. 15.  After learning of Plaintiff's counsel's passing, see infra n.14, I held a telephonic hearing with Mr. Shiner and counsel for the Administration during which Mr. Shiner consented to magistrate judge jurisdiction and proceeding before me.  Doc. 20.

>   1. Whether the claimant is currently engaged in substantial gainful activity;
>
>   2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
>   3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
>   4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
>   5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether substantial evidence supports the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III.   DISCUSSION

The ALJ found that, through the date Plaintiff was last insured, he had the medically determinable impairments of diabetes and obesity, tr. at 38, but that he did not suffer from any severe impairment or severe combination of impairments, id. at 39, and was therefore not disabled.  Id. at 42.

### A.   Summary of the Record

#### 1.   Medical/Mental Health Treatment Record

Plaintiff was born on March 10, 1962, making him 57 years old at the time of his application (May 6, 2019), and 58 at the time of the ALJ's decision (May 29, 2020).  Tr. at 248.  He is a high school graduate and worked as a school district custodian from 2001 to 2013.  Id. at 314.  It is unclear from the record when Plaintiff stopped working.  During the administrative hearing, he testified that he stopped working in 2016.  Id. at 58. However, in his application, he claimed that he became disabled on December 31, 2013, id. at 248, and in the Disability Report Plaintiff completed on May 11, 2019, he also reported that he stopped working on December 31, 2013.  Id. at 313.

There are scant medical records and no mental health treatment records predating the expiration of Plaintiff's insured status in September 2017. On January 15, 2008, while Plaintiff was still working, he was diagnosed with tendinopathy of the right shoulder. Tr. at 440-41. On April 16, 2014, Plaintiff was seen at the Health Center at Bangor for a boil on the top of his left foot. Id. at 854. He was referred to the Muhlenberg emergency department for a fourth toe abscess with left foot cellulitis and uncontrolled diabetes. Id. at 854-56. The treatment note indicates that Plaintiff is a non-compliant diabetic who last took metformin[5] a week earlier. Id.

After the expiration of his insured status, Plaintiff was hospitalized in January 2019 for cellulitis with necrosis of the fifth toe on his right foot, resulting in amputation of the toe. Tr. at 843. On March 9, 2019, treatment notes indicate the wound was not healing and Plaintiff had a worsening infection, resulting in amputation of the fourth toe on the right foot. Id. at 628-31. On March 15, 2019, James Guzzo, M.D., performed a below-knee amputation of the right leg. Id. at 626. On January 20, 2020, Sharon Cline, M.D., opined that Plaintiff was unable to perform many of the tasks required of a school custodian due to his partial right leg amputation. Id. at 1908.

With respect to Plaintiff's mental health impairments there are no records of treatment that predate the expiration of his insured status. During his hospitalization in March 2019, but prior to the amputation of his lower right leg, Plaintiff was seen for

---

[5]Metformin is a medicine used together with diet to lower high blood sugar levels in patients with type 2 diabetes. See https://www.drugs.com/metformin.html (last visited July 19, 2022).

symptoms of depression. Tr. at 677-79. At that time, Plaintiff recounted a history of depression and also a history of anxiety for which he was prescribed Xanax,[6] but he reported that was not in active outpatient treatment and stated that his last mental health treatment was 12-15 years prior. Id. at 678. Also at that time his wife, Ellen Shiner, reported that Plaintiff had become increasingly depressed due to his medical issues. Id. Leticia C. Velivis, M.D., diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features, and prescribed Zoloft and recommended Plaintiff begin outpatient psychiatric follow up. Id. at 681.[7]

A psychological evaluation performed by Faust Ruggiero, M.S., from Community Psychological Center ("CPC"), on June 12, 2019, tr. at 2208-09, indicated that Plaintiff "presented as severely depressed, anxious, and that he expressed feelings of hopelessness and despair." Id. at 2209.[8] At that time, Mr. Ruggiero stated that, in addition to depression and anxiety, Plaintiff was also experiencing post-traumatic operative stress, exacerbating his depression, and concluded that the combination of Plaintiff's physical limitations and his anxiety and depression, made it doubtful "that he can maintain

---

[6]Xanax is a benzodiazepine used to treat anxiety disorders, anxiety caused by depression, and panic disorders. See https://www.drugs.com/xanax.html (last visited July 19, 2022).

[7]Zoloft is an antidepressant. See https://www.drugs.com/zoloft.html (last visited July 20, 2022).

[8]In her decision, the ALJ indicated that this evaluation took place in March 2019. Tr. at 39. The evaluation is dated June 12, 2019, but at the beginning of the evaluation, it indicates that the date of Plaintiff's surgery was March 15, 2019. Id. at 2208-09.

6

employment at this time." Id.  Plaintiff saw Mr. Ruggiero again on March 3, 2020, at which time Plaintiff's depression and anxiety had increased.  Id. at 2207.

In addition, evidence first presented to the Appeals Council from psychologist Carl. J. Catino, Ph.D., from CPC dated June 23, 2020, indicates that Plaintiff had been a client at CPC beginning in 1991, and that he attended sessions sporadically until 2009.  Tr. at 26.  According to Dr. Catino, Plaintiff began therapy with Mr. Ruggerio in 2011.  Id.  Dr. Catino noted that Plaintiff's amputation surgery "severely [ex]acerbated his psychological symptoms to the point that he will be unable to work for both emotional and physically [sic] reasons."  Id.  The evidence submitted to the Appeals Council also included a June 9, 2020 letter from Mr. Ruggiero stating that Plaintiff had been a patient at CPC since January 1991, and that his "severe case of diabetes, . . . combined with his anxiety and depression, causes him to experience periods of deep emotional incapacitation."  Id. at 28.  Mr. Ruggiero also stated that Plaintiff "has been hospitalized [for severe anxiety and depression], seen several psychiatrists and other doctors, and no medication seems to alleviate the symptoms."  Id.

  2. Testimony

Plaintiff testified that he stopped working in 2016 because he was afraid to leave his house and could not think straight.  Tr. at 58.  At the time that his insured status expired on September 30, 2017, he explained that he was afraid to be in crowds or around people.  Id. at 59.  He had trouble concentrating and did not bother with anyone but his wife.  Id. at 61-62.  Plaintiff said that during 2017 he was in mental health treatment only

as needed when he could afford it at CPC, id. at 60, and was not taking any medications. Id. at 63.[9]

Mrs. Shiner also testified at the hearing. Tr. at 67-69. She testified that Plaintiff has been struggling with mental health issues his entire life. Id. at 67. She explained that Plaintiff has a history of panic attacks and they hindered his return to the workforce in 2017. Id. She also said that he sought help at CPC at times throughout the years.

> They help him at different times when he's just beyond . . . , he gets angry and depressed and to the point where, . . . he mentions he can't do this anymore. Then I call [CPC] and they'll see him and they'll clam him down and they help in a way but . . . it never seems to help all the way.

Id. at 68.

### B. Plaintiff's Claims

Plaintiff claims that the ALJ erred by ignoring or discrediting probative evidence without explanation, failing to properly consider the medical findings of Plaintiff's physicians and psychologists, and failing to properly consider Plaintiff's testimony and that of his wife. Doc. 13. Finally, Plaintiff complains that the Appeals Council improperly failed to consider evidence presented after the ALJ's decision. Doc. 13 at 9.[10] Defendant responds that the ALJ's decision is supported by substantial evidence and that the ALJ properly considered the evidence and the testimony. Doc. 14. Defendant also

---

[9]During the administrative hearing, Plaintiff's counsel asked him questions about pain and symptoms he suffers from after the leg amputation, despite the fact that this is not relevant to the period at issue. Tr. at 65-66, 68.

[10]Pinpoint citations to the briefs filed in this court will be to the court's ECF pagination.

argues that the evidence presented to the Appeals Council post-dates the expiration of Plaintiff's insured status by more than two years and would not have changed the decision. Id. at 10.

The central problem in Plaintiff's challenge is that he applied for DIB, and thus must establish disability prior to expiration of his insured status on September 30, 2017. However, Plaintiff ignores the expiration of his insured status in his briefing. For example, Plaintiff focuses on the exacerbation of his mental health issues caused by the amputation of his lower leg, which occurred in March of 2019, after the expiration of his insured status. Doc. 13 at 15.[11] Plaintiff's arguments regarding the ALJ's ignoring probative evidence, failing to properly consider medical findings and the testimony presented by Plaintiff and his wife, likewise suffer from the same flaw. The limitations imposed by Plaintiff's impairments after the date his insured status expired are irrelevant to the determination of his entitlement to DIB. See 20 C.F.R. § 404.131(b) (to be entitled to DIB, Plaintiff must establish that he became disabled on or before his date last insured).[12]

---

[11] Plaintiff also fails to recognize the definition of disability in pressing his claims. As previously explained, in order to be found disabled for purposes of DIB, Plaintiff has to be found unable to work prior to the expiration of his insured status. The first step in the analysis asks whether Plaintiff is working. 20 C.F.R. § 404.1520(a)(4)(i). Here, Plaintiff testified that he stopped working in 2016. Tr. at 58. Thus, he could not be considered disabled before that point. However, in his statement of the case, Plaintiff states that "[t]he disability began on this date: 1991 and has continued to plague him through [h]is life." Doc. 13 at 6. This statement is inconsistent with Plaintiff's claimed disability onset date, December 31, 2013, tr. at 248, and the date on which he testified he stopped working, sometime in 2016. Id. at 58.

[12] Unlike DIB, supplemental security income ("SSI"), for which Plaintiff did not apply, does not require Plaintiff to establish that he became disabled prior to the

Plaintiff argues that the ALJ "fails to recognize the severe symptoms and problems that are well documented in all the medical evidence that has been submitted." Doc. 13 at 9. As noted in discussing the medical and mental health records, there are scant medical records and no mental health treatment records for the period predating September 30, 2017, the day Plaintiff's insured status expired. The bulk of the treatment notes in the record relate to 2019, when Plaintiff had an infection of the toes on his right foot that resulted in amputation of the lower portion of his right leg.

Plaintiff relies on Social Security Ruling ("SSR") 96-7, which provided guidance on how to evaluate symptoms in a disability case, in arguing that the ALJ failed to properly consider his testimony and that of his wife. Doc. 13 at 14. SSR 96-7 was superseded by SSR 16-3p, which eliminates the term "credibility" from the Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p applies to all decisions on or after March 28, 2016. Id.; see also 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017) (republishing SSR 16-3p and establishing applicability date of March 28, 2016). SSR 16-3p directs an ALJ to conduct a two-step

---

expiration of his insured status. The limitations caused by the amputation and any exacerbation of mental health impairments caused by the amputation would be relevant for a disability determination if Plaintiff were to file for SSI at this point, with no regard for his insured status. In addition, the Social Security Administration can provide a list of attorneys who specialize in this area of law who can represent a claimant pursuant to a fee agreement wherein the fees are capped and would be deducted from a favorable benefit award.

process to (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms, and (2) evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which an individual's symptoms limit his ability to perform work-related activities. SSR 16-3p, 2016 WL 1119029, at *3-5.

Here, the ALJ found that "[Plaintiff's] medically determinable impairments could have reasonably been expected to produce the alleged symptoms," tr. at 41, however, Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . are inconsistent with the medical evidence of record prior to his date last insured." Id. The ALJ reviewed the treatment notes in the record for the relevant time and concluded that "there is no evidence to suggest that these impairments had more than a minimal effect on [Plaintiff's] ability to perform basic work activities." Id. This finding is supported by substantial evidence.

SSR 16-3p states that the ALJ "will not find an individual disabled based on alleged symptoms alone." 2016 WL 1119029, at *4. The Ruling states that, in evaluating symptoms, the ALJ will consider, among other things, the type, dosage, effectiveness, and side effects of medication used to alleviate the symptoms and other treatment the claimant has used to relieve the symptoms. Id., 2016 WL 1119029, at *7. Here, as previously noted, there are scant medical treatment notes for the period prior to the expiration of Plaintiff's insured status and no contemporaneous mental health treatment notes for the relevant period. In addition, the ALJ specifically noted that Plaintiff testified that he sought mental health treatment as needed and that he was not

taking any medications during the relevant period.  Id. at 40.  Thus, I conclude that the ALJ's consideration of Plaintiff's symptoms during the relevant period is not deficient.

Finally, Plaintiff complains that the Appeals Council improperly rejected letters he provided after the ALJ's decision.  Doc. 13 at 6; see also tr. at 5-10 (8/6/20 letter from Plaintiff's wife, 6/30/20 letter from Dr. Catino, and 6/9/20 and 8/4/20 letters from Mr. Ruggiero).  The Appeals Council found that "[t]his additional evidence does not relate to the period at issue."  Tr. at 3.  Plaintiff argues that the letters did relate to the period at issue and establish that he had mental health issues since 1991 continuing through his date last insured to the present time.  Doc. 13 at 14.

In his June 9, 2020 letter, Mr. Ruggiero recounts Plaintiff's history of severe panic attacks treated with "a variety of medications," hospitalization and treatment by psychiatrists and other doctors.  Tr. at 7.  However, there are not contemporaneous notes to support this treatment.  Id.  Moreover, Mr. Ruggiero concludes that "at this point, [Plaintiff] is not able to seek employment."  Id.  Mr. Ruggiero's letter dated August 4, 2020, provides an update of Plaintiff's symptoms.  The relevant period for purposes of eligibility for DIB expired on September 30, 2017.  Similarly, Dr. Catina opined that "it is very evident that [Plaintiff's] severe social anxiety and depression coupled with his diabetes and leg amputation will prohibit him from attaining gainful employment."  Id. at 8.[13]  This is an opinion on Plaintiff's current status and is not relevant to the period under consideration.

---

[13]Dr. Catina also opined that "since 1991, individual therapy, medications, and hospitalizations have failed to alleviate his symptoms to the point that he could maintain

## V.     CONCLUSION

The Social Security Administration provides for several different programs, including DIB, for which the claimant must be insured at the time of the disability onset, and SSI, which does not require such insured status.  Plaintiff filed an application for DIB and the record contains scant treatment records through September 30, 2017, when his insured status expired.  The record does establish that Plaintiff's condition worsened significantly in 2019 with the amputation of his lower right leg.  In his DIB application, Plaintiff specifically stated that he did not want to apply for SSI.  Tr. at 248.  He may want to reconsider that decision in light of his more recent medical developments.  See supra n.12.[14]

An appropriate Order follows.

---

employment for any significant time period."  Tr. at 8.  Again, there is no contemporaneous treatment evidence to support this conclusion with respect to the insured period.

[14]Plaintiff, rather than his counsel, filed the reply, in which he noted that his counsel was gravely ill.  Doc. 16.  Since that filing, it appears that Plaintiff's counsel has passed away.  See https://www.schislerfuneralhomes.com/obituary/john-molnar-jr (last visited July 19, 2022).  Therefore, I will direct the Clerk of Court to mail a copy of this Memorandum and Order to Plaintiff at the return address on the envelope containing the reply, which Plaintiff confirmed on the record at the recent telephonic hearing.